UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC A. HAZEN,<br><br>Plaintiff,<br><br>v.<br><br>CITIBANK, N.A.,<br><br>Defendant. | Case No. 1:18-cv-00103-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it a Motion to Compel Arbitration and Stay Proceedings (Dkt. 4) filed by defendant Citibank, N.A. The Court finds these matters appropriate for decision without oral argument. For the reasons discussed below, the motion will be granted, and the Court will order arbitration for all parties.

## BACKGROUND

Plaintiff Eric A. Hazen began working for Citibank, N.A. ("Citi") in May 2006. *Compl.* ¶ 6. In his employment application dated February 15, 2006, Hazen acknowledged, "I am advised that the Company has a mandatory employment arbitration policy and employment is contingent upon execution of written employment documents including an agreement to submit employment related disputes to binding arbitration." *Squyres Decl.* Ex. 1 at 3, Dkt. 4-2 ("Employment Application"). On March 20, Hazen signed a form called "Principles of New Employment," which included the statement

"[y]ou agree to follow our dispute resolution/arbitration procedures for employment disputes." *Id.* Ex. 2 ("Principles of Employment"). Several times during the following years, Hazen received an email directing him to a webpage that contained several statements and required him to click an "I Acknowledge" button in order to have the ability to download and print a copy of the latest Employee Handbook. *Id.* Ex. 3. These statements included the following:

> Appended to the Handbook is an Employment Arbitration Policy as well as the "Principles of Employment" that require you to submit employment-related disputes to binding arbitration (see Appendix A and Appendix D). You understand that it is your obligation to read these documents carefully, and that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of Citi's right to compel arbitration of employment-related disputes. . . . WITH THE EXCEPTION OF THE EMPLOYMENT ARBITRATION POLICY, YOU UNDERSTAND THAT NOTHING IN THIS HANDBOOK, NOR THE HANDBOOK ITSELF, IS CONSIDERED A CONTRACT OF EMPLOYMENT.

*Id.* In 2008, 2010, and 2013, Mr. Hazen clicked "I acknowledge." *Id.*

Both parties appear to agree that the 2013 Arbitration Policy is the policy that is currently in effect.[1] *See Def.'s Reply* at 1 n.1, Dkt. 6 ("To be clear, Citi's position is that the 2013 Arbitration Policy . . . is the operative policy and the one at issue in this Motion."); *Pl.'s Resp.* at 6, Dkt. 5 ("Employees are not subject to the arbitration agreement they are hired under but the updated one each year that they make employees

---

[1] References in this order to the "Arbitration Policy" mean the 2013 Arbitration Policy.

acknowledge to read and state this is the new HR and policy information"). Under "Scope of Policy," the Arbitration Policy provides:

> This Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which by statute are not subject to arbitration) which are based on legally protected rights (i.e., statutory, regulatory, contractual, or common-law rights) and arise between you and Citi . . . These disputes include, without limitation . . . the Americans with Disabilities Act of 1990 . . . and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, or retaliation, whistle-blowing, or any claims arising under the Citigroup Separation Pay Plan.

*Squyres Decl.* Ex. 4 at 53, Dkt. 4-2 ("2013 Arbitration Policy").

The Arbitration Policy also specifies certain actions that employees may take in spite of the agreement to arbitrate disputes. Specifically, it states that "[n]othing in this Policy shall prevent you or Citi from seeking from any court of competent jurisdiction injunctive relief in aid of arbitration or to maintain the status quo prior to arbitration." *Id.* at 54. Additionally, the Policy states:

> The Policy doesn't exclude the jurisdiction of the [EEOC] and/or state and local human rights agencies to investigate alleged violations of the laws enforced by the EEOC and/or these agencies. You aren't waiving any right to file a charge of discrimination with the EEOC and/or state or local human rights agency. However, you shall not be entitled to seek or receive any monetary compensation as a result of any proceeding arising from the filing of a charge, and/or participating in an investigation resulting from the filing of a charge, with the EEOC and/or state or local human rights agency.

*Id.*

Finally, the Policy describes certain conditions that apply in cases of arbitration. For example, Citi pays the filing, hearing, and arbitrator fees, as well as all other ordinary and reasonable expenses of the arbitration *Id.* at 57. Each sides otherwise pays its own legal fees and expenses. *Id.* Additionally, the arbitrator may award the employee the same relief as would be available in court, as well as attorneys' fees where expressly permitted by applicable law. *Id.* at 56.

Hazen was discharged on May 14, 2013. *Compl.* ¶ 50. After being discharged, Hazen filed a complaint with the Idaho Human Rights Commission. *Id.* ¶ 51. On August 10, 2017, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a determination finding that there was reasonable cause to believe that Citi refused to provide Mr. Hazen with reasonable accommodations and was discharged in retaliation for requesting reasonable accommodations. *Id.* ¶¶ 53-54. The EEOC mailed Hazen a Right to Sue letter on December 1, 2017. *Id.* ¶ 55.

On February 28, 2018, Hazen filed a three-count complaint alleging discrimination and retaliation in violation of the Americans with Disabilities Act (ADA) and the Idaho Human Rights Act (Dkt. 1). In his complaint, Hazen claims that on at least two occasions, Citi refused to make a reasonable accommodation for his disability, and eventually terminated him rather than consider the accommodation. *Id.* ¶ 1. On April 23, 2018, Citi filed the instant Motion to Compel Arbitration and Stay Proceedings (Dkt. 4). Briefing on the Motion was completed on June 1, 2018.

# LEGAL STANDARD

The Federal Arbitration Act (FAA) controls the enforcement of arbitration clauses. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). It provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'; and § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement (assuming that the 'making of the arbitration agreement or the failure ... to perform the same' is not at issue)." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

Under the FAA, "[a] party seeking to compel arbitration has the burden ... to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

# ANALYSIS

**1.    Arbitrability**

The Federal Arbitration Act ("FAA") enunciates a strong federal policy favoring arbitrating, and requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The FAA provides that an arbitration agreement "[s]hall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where there is an arbitration clause within a contract, "there is a presumption of arbitrability." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986); *see also Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960) (stating "[d]oubts should be resolved in favor of coverage"); *Concepcion*, 563 U.S. at 351 ("Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations").

The presumption favoring arbitrability remains where a party bound by an arbitration agreement raises claims founded on statutory rights. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Dittenhafer v. Citigroup*, 467 F. App'x 594 (9th Cir. 2012) (affirming district court's grant of employer's motion to compel arbitration of Title VII and ADA claims).

Hazen argues his EEOC-issued Notice of Right to Sue letter grants him the literal "right to sue" Citi regardless of the existence of an arbitrability provision and entitles him to proceed to a jury trial. *Pl. Resp.* at 4, Dkt. 5. Hazen misunderstands the import of the

EEOC's Notice of Right to Sue letter. In order to maintain an ADA action, a plaintiff must first file a timely charge of discrimination with the EEOC. *See Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). If the EEOC dismisses the charge, the claimant has ninety days to file a civil action. *See* 29 C.F.R. § 1601.28(e)(1); 42 U.S.C.§ 2000e-5(f)(1). In Title VII cases, this ninety-day period is a statute of limitations. *See Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997) (citations omitted). Because the ADA adopts the procedural requirements of Title VII, including the EEOC filing requirement, the ninety-day limitation period applies to ADA suits. *See* 42 U.S.C. § 12117(a); *see also Santa Maria*, 202 F.3d at 1176.

Hazen's Notice of Right to Sue letter confirms that its purpose is to provide notice that the EEOC has dismissed the charge and that the limitation period for the charge has begun. Indeed, under its ADA heading, the letter states:

> This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.

*EEOC Ltr.* at 1, Ex. 3, Dkt. 5 (emphasis in original). Nowhere in the letter is there language suggesting arbitration provisions are superseded. *Id.* Instead, the plain language of the letter indicates that the EEOC intended to inform Hazen that his claim was

exhausted and that he could pursue it through a lawsuit. That his claim arises under the ADA does not preclude it from being arbitrable.[2] *See Dittenhafer*, 467 F. App'x at 594.

## 2. Contract Formation

### A. Knowing Agreement

For claims that arise under the ADA, there must be a *knowing* agreement to arbitrate. *See Nelso v. Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997) (using the "knowing" requirement used in Title VII cases to analyze an ADA claim). A knowing agreement is a choice "that must be explicitly presented to the employee[,] and the employee must explicitly agree to waive the specific right in question." *Id.* at 762.

The Citi employee acknowledgement presented to Hazen was explicit. *See Squyres Decl.* Ex. 3, Dkt. 4 (stating the Employee Arbitration Policy was a "contract of employment"). The acknowledgment made clear that as a condition of continuing to work at Citi, Mr. Hazen was agreeing to its Employee Arbitration Policy. *Id.* The Employee Arbitration Policy itself states that it "makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes

---

[2] Separate from the question of whether Mr. Hazen's claims are arbitrable based on the kinds of rights that gave rise to them is the question of who may determine their arbitrability: an arbitrator or a court. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) ("[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*.'") (internal quotation marks omitted) (emphasis in original). Here, the parties arguably provided otherwise because the Arbitration Policy contains a provision stating that "[e]xcept as otherwise expressly agreed upon, and except as otherwise provided by this Policy, any dispute as to the arbitrability of a particular claim made pursuant to this Policy shall be resolved in arbitration." *2013 Arbitration Policy* at 57, Dkt. 4-2. However, the Court finds that the parties here have agreed otherwise, given that Citi made no reference to this provision and did not argue that the threshold issue of arbitrability may only be decided by an arbitrator, not this Court.

which by statute are not subject to arbitration) . . . ." *Id.* Ex. 4 at 53. Mr. Hazen acknowledged this policy as a condition of his continued employment in 2008, 2010, and 2013. *Id.* Ex. 3. It is evident that Citi presented its Employee Arbitration Policy as an explicit condition to Hazen, that he acknowledged the Policy, and that he agreed to its terms when he continued to work at Citi.

B.   **Unconscionability**

Hazen argues the Court should not enforce the Arbitration Policy because it is unconscionable under Idaho law. *Pl.'s Resp.* at 6, Dkt. 5. Citi counters that there are two independent bases for rejecting Mr. Hazen's unconscionability argument: (1) he did not address procedural unconscionability, a required element of the unconscionability defense, and (2) the Arbitration Policy is not substantively unconscionable. *Def.'s Reply* at 1, Dkt. 6.

While the Court applies federal law in determining whether an arbitration provision is enforceable, it can apply state law pursuant to § 2 of the FAA. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Thus, like other contracts, arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability" without contravening the FAA. *Rent-A-Center*, 561 U.S. at 68 (internal quotation marks omitted); *cf. Lovey v. Regence BlueShield of Idaho*, 72 P.3d, 877, 822 (Idaho 2003) (stating that the grounds for

revocation of an arbitration clause are mutual agreement or vitiating conditions such as "fraud, mistake, or duress").

It is well-settled law that a Court may refuse to enforce a contract or contractual provision that is unconscionable. *See Lovey*, 72 P.3d at 882. However, for an arbitration clause to be deemed unconscionable, it must be both procedurally and substantively unconscionable. *See id.* Procedural unconscionability relates to the bargaining process leading to the agreement, while substantive unconscionability focuses upon the terms of the agreement itself. *Id.*

### (1) Procedural Unconscionability

"Indicators of procedural unconscionability generally fall into two areas: lack of voluntariness and lack of knowledge." *Lovey*, 72 P.3d at 882. "[T]he lack of opportunity to study the contract and inquire about its terms" can demonstrate a "lack of knowledge." *Id.* Though Citi asserts that Hazen never addressed procedural unconscionability, Hazen's complaint can be understood to assert lack of knowledge; he had to agree to the statements listed on the webpage by clicking "I acknowledge" before he could download the updated versions of the Employee Handbook in 2008, 2010, and 2013. Hazen describes the process as follows:

> One, you have to 'acknowledge' first before you can gain access to the handbook and second nowhere on the '2013 U.S. Employee Handbook Acknowledgement Receipt' [does it] indicate or declare you are agreeing to said contract contained in the handbook. It is very confusing and does not plainly state you are entering into a contract by hitting an 'Acknowledge' button on a web page. Third, you have to 'acknowledge' which appears to be Citi's intended way of *having you agree to the arbitration agreement*

> *before you can actually read the handbook to see what if any rights* you may be giving up.

*Pl's Resp.* at 5, Dkt. 5 (emphasis added).

However, as discussed *supra*, Hazen knowingly agreed to arbitrate because the acknowledgment made clear that Hazen was agreeing to Citi's Arbitration Policy as a condition of continuing to work at Citi. Additionally, even assuming *arguendo* that his actions of signing the Principles of Employment and clicking "I acknowledge" in 2009, 2010, and 2013 were insufficient to form a contact, Mr. Hazen's decision to continue working at Citi did. A party may accept an offer through silence "'if the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.'" *Eimco Div., Envirotech Corp. v. United Pac. Ins. Co.*, 710 P.2d 672, 674 (Idaho 1985) (quoting Rest. 2d. Contracts § 69 (1981)), *abrogated on other grounds by Evco Sound & Elec., Inc. v. Seaboard Sur. Co.*, 223 P.3d 740 (Idaho 2009). Here, Hazen could have read the handbook at any point after clicking "I acknowledge" and objected to the terms of the Arbitration Policy. He did not do so. Therefore, the Arbitration Policy is not procedurally unconscionable on the grounds that Mr. Hazen had to click "I acknowledge" before he could download the updated versions of the Employee Handbook.

Hazen also distinguishes the Principles of Employment from the Arbitration Policy, stating that he only signed the Principles of Employment in 2006. Though Hazen is correct when he asserts, "Citi's own '2013 U.S. Employee Handbook Acknowledgement Receipt' states that only the Arbitration Policy is a contract, not the

'Principles of Employment,'" the Arbitration Policy is included *within* the Principles of Employment. Therefore, Hazen agreed to the Arbitration Policy when he signed the Principles of Employment in 2006.

Hazen also seems to claim that he did not agree to the 2013 terms because "the 2006 document [he] signed is out of date and significantly different [than]the one published in 2013." However, Hazen does not provide any examples of ways in which the Arbitration Policies are significantly different. Additionally, the relevant provisions in the 2006 and 2013 Arbitration Policies are substantially similar, and in fact largely identical. *Compare, e.g.*, *2013 Arbitration Policy* at 1, Dkt. 4-2 ("Except for the Employment Arbitration Policy, nothing contained in this *Handbook* nor the *Handbook* itself should be considered a contract of employment.") *with Squyres Decl.* Ex. 5 at 1, Dkt. 6-1 ("2006 Arbitration Policy") (same); *2013 Arbitration Policy* at 37, Dkt. 4-2 ("The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights . . . that may arise between an employee or former employee and the Company") *with 2006 Arbitration Policy* at 37, Dkt. 6-1 (same); *2013 Arbitration Policy* at 40, Dkt. 4-2 ("The Company shall pay the hearing fee and arbitrator fee for the hearing.") *with 2006 Arbitration Policy* at 40, Dkt. 6-1 (same). Therefore, the Arbitration Policy is not procedurally unconscionable on the grounds that it differs significantly from the 2006 Arbitration Policy.

### (2) Substantive Unconscionability

Even if the Court were to find procedural unconscionability, the claim would fail because Hazen also has not shown substantive unconscionability. His argument of substantive unconscionability focuses on a single provision of the Arbitration Policy, which provides as follows:

> You aren't waiving any right to file a charge of discrimination with the EEOC and/or state or local human rights agency. However, you shall not be entitled to seek or receive any monetary compensation as a result of any proceeding arising from the filing of a charge, and/or participating in an investigation resulting from the filing of a charge, with the EEOC and/or state or local human rights agency.

*2013 Arbitration Policy* at 54, Dkt. 4-2. Hazen claims that this provision is unconscionable because it is a "false and or a fraudulent attempt to discourage the use of the EEOC in rectifying discrimination wrong," since it "steers employees and their attorneys away from filing a charge with the EEOC by telling them up front that the employee will not be able to recover any lost wages as a result of discrimination and retaliatory terminations," and in that way, is "destructive to the mission of the EEOC."[3] *Pl.'s Resp.* at 6-8, Dkt. 5.

Hazen is correct that this provision misstates the law. Though "a grievant's acceptance of an arbitration award or settlement is prima facie evidence that he has received full compensation for his individual damages," he can still attempt to obtain

---

[3] Mr. Hazen also adds that if he were allowed to discuss the details of the EEOC conciliation process that he underwent with Citi, he could prove that this provision makes a false claim. *Pl.'s Resp.* at 7-8, Dkt. 5.

additional awards in court if he meets his "burden of proving that what he received was not intended to be a complete settlement of his claim for money damages." *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 574 (9th Cir. 1973). Specifically, the grievant "may press for additional money damages" "[i]f he can prove that the apparent settlement was not based on the full range of issues cognizable under Title VII, or that it was accepted only as a partial settlement because the grievance arbitration machinery was limited in its available remedies." *Id.* Therefore, the challenged Arbitration Policy provision misstates the law because it suggests that by agreeing to the Arbitration Policy, grievants waive the right to even *attempt* to obtain additional money damages arbitration.

However, the Arbitration Policy also contains a severability provision that prevents the invalidation of the Arbitration Policy as a whole. Section 28 states: "If any part or provision of this Policy is held to be invalid, illegal, or unenforceable, such holding won't affect the legality, validity, or enforceability of the remaining parts and each provision of this Policy will be valid, legal, and enforceable to the fullest extent permitted by law." *2013 Arbitration Policy* at 67, Dkt. 4-2. Thus, even though Hazen is correct that the challenged section is invalid, that does not invalidate other provisions of the Arbitration Policy. Because the challenged provision does not affect whether arbitration may be compelled, but only whether Hazen may seek additional money damages after the arbitrator issues a decision, the invalidity of the challenged provision is not relevant to the motion at issue here. Additionally, courts may invalidate arbitration agreements in part. *See Simmons v. Rush Truck Ctrs. of Idaho, Inc.*, No. 4:16-cv-00450-

EJL, 2017 WL 2271123, at *2 (D. Idaho May 24, 2017) ("[G]eneral contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements in whole or in part."). Therefore, though the Court finds the challenged provision to be invalid, its invalidity does not render the Arbitration Policy as a whole substantively unconscionable.

## ORDER

**IT IS HEREBY ORDERED:**

1. Defendant's Motion to Compel Arbitration and Stay Proceedings (Dkt. 4) is **GRANTED**.

DATED: August 13, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge